IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERI L. JOHNSON, | ) |
|     Plaintiff | ) ) ) |
| v. | ) No. 18 C 3587 ) ) Hon. M. David Weisman |
| KELLY J. REEME and CRETE CARRIER CORPORATION, | ) ) ) |
|     Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendants to recover for injuries she sustained when a truck owned and operated by them backed into her motorcycle. The case is before the Court on the parties' motions pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment. For the reasons set forth below, the Court denies plaintiff's motion and grants defendants' motion.

**Facts[1]**

On June 27, 2016, defendant Reeme, who was employed by defendant Crete, was operating a tractor trailer owned by Crete. (ECF 155 ¶¶ 11-13.) Plaintiff was driving a motorcycle directly behind the tractor trailer. (*Id.* ¶ 14.) Reeme reversed, trapping the motorcycle's front tire underneath the tractor trailer's rear bumper and dragging it backwards, causing plaintiff to fall onto her right side, striking her right elbow on the ground and trapping her right foot, ankle, and leg underneath the overturned motorcycle. (*Id.* ¶ 17.) Defendants admit that Reeme negligently reversed the tractor trailer. (*Id.* ¶ 22.)

---

[1] These facts are undisputed unless noted otherwise.

Dr. Burra, plaintiff's treating orthopedic surgeon, opined that plaintiff suffered injuries to her shoulder in the form of a SLAP tear[2] as a result of the accident. (*Id.* ¶ 23.) He also testified that plaintiff developed an AC[3] joint contusion and secondary impingement, and subsequently developed secondary adhesive capsulitis as a combination of all these injuries. (*Id.* ¶ 24.)

On December 8, 2016, Dr. Burra operated on plaintiff's shoulder. (*Id.* ¶ 25.) He said the procedures he performed, *i.e.*, a biceps tendon tenodesis, a debridement of the labrum, a subacromial decompression, an acromioplasty, and a distal clavicle resection, were required to address the injuries plaintiff sustained because of the accident. (*Id.*)

On February 6, 2017, Dr. Burra released plaintiff to return to work without restrictions. (*Id.* ¶¶ 26-27.)

On February 2, 2017, Dr. Panuska, who does medical evaluations for plaintiff's then-employer Dow Chemical Corporation, evaluated plaintiff. (*Id.* ¶¶ 36-38.) Dr. Panuska released plaintiff to work but with restrictions that were incompatible with her job. (ECF 152 ¶ 20; ECF 155 ¶ 62.) Dr. Panuska testified that plaintiff's shoulder injuries altered her shoulder anatomy and put her at risk for re-injury. (ECF 155 ¶ 42.)

Initially, Dow put plaintiff on short-term disability and later, on long term disability. (*Id.* ¶ 61.) Dan Neumann, Dow's human resource manager, testified that once plaintiff qualified for long-term disability, she was terminated from Dow. (ECF 132 at 70.) After being terminated, plaintiff could have, but did not, re-apply for employment with Dow. (ECF 152 ¶¶ 28, 30.)

---

[2] A SLAP tear is a superior labrum, anterior to posterior tear. SLAP tears happen when the cartilage in the inner part of the shoulder joint is torn. https://my.clevelandclinic.org/health/diseases/21717-slap-tear (last visited Dec. 2, 2022).
[3] The AC or acromioclavicular joint is a joint in the shoulder where the clavicle and scapula meet. https://www.hopkinsmedicine.org/health/conditions-and-diseases/ac-joint-problems (last visited Dec. 2, 2022).

Plaintiff testified at her deposition that there is nothing she cannot do now because of her injuries that she could do before the accident. (*Id.* ¶ 36.) Plaintiff has regained full range of motion in her shoulder and now works full-time as a painter. (Id. ¶¶ 38-39.)

For the twenty-three years before the accident, plaintiff worked for Dow as a machine operator. (ECF 155 ¶ 73.) She earned $35.10 per hour and worked at least forty hours per week as well as approximately 7-9 hours of overtime each week. (*Id.*) Plaintiff's expert, Dr. Stan Smith, Ph.D., opined that plaintiff will have sustained a net wage and benefits loss of $1,790,795.00, if she retires at 62, or $1,467,257.00, if she retires at 67, as a result of her injuries. (*Id.* ¶ 69.) He also said that plaintiff will have sustained a loss of household/family housekeeping and home management services in the amount of $56,115.00 (*Id.* ¶ 70.) Defendants' expert, Dr. Elizabeth Powers, Ph.D., opined that plaintiff suffered a net compensation loss of $1,060,908.00 (ECF 134 at 13.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

**Plaintiff's Motion**

Plaintiff seeks summary judgment on the negligence claims she asserts against both defendants. For plaintiff to prevail on this motion, the undisputed facts must show that defendants owed a duty of care to plaintiff, defendants breached that duty, and the breach was the proximate cause of plaintiff's injuries. *Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 158-59 (2000). "Proximate cause encompasses two requirements: cause-in-fact and legal cause." *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 856 (N.D. Ill. 2017). "For cause-in-fact, the Court must ask 'whether the injury would have occurred absent the defendant's conduct.'" *Id.* (quoting *Young v. Bryco Arms*, 821 N.E.2d 1078, 1085 (Ill. App. Ct. 2004)). To establish legal cause, plaintiff must show that the injury was reasonably foreseeable, *i.e.*, a reasonable person could foresee that his conduct could lead to the injury. *Id.* "'While proximate cause is ordinarily a question for the trier of fact, it becomes a question of law where there is no material issue of fact regarding the matter or only one conclusion is clearly evident.'" *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001).

It is undisputed that defendants owed plaintiff a duty of care and that they breached that duty. (ECF 155 ¶¶ 11-13, 15, 22.) Plaintiff contends that defendants' expert, Dr. Powers, admitted that defendants' negligence was the proximate cause of plaintiff's economic injuries in her report, which says, "I was asked to analyze the expected present discounted value of the earnings loss suffered by [plaintiff] due to her injury. This included evaluating her earnings potential if the injury had not occurred (counterfactual case), as well as current earnings potential (factual case)." (ECF 134 at 15.) Defendants argue that Dr. Powers's statements are not admissions of proximate cause because: (1) "they are merely inadvertent introductions/explanations for the basis of the hypothetical economic opinions she actually provides;" (2) she is not qualified to opine that

plaintiff's injuries caused or contributed to her loss of employment with Dow; and (3) her statements are not binding judicial admissions. (ECF 154 at 7.)

The Court is not persuaded that Dr. Powers's statements are "inadvertent introductions" for the opinions she provides. (*Id.*) Rather, they are her explanation of the work defendants asked her to do, *i.e.*, to analyze the earning loss plaintiff suffered because of her injury. That does not, however, mean that Dr. Powers is qualified to testify that plaintiff lost her job with Dow because of the injuries she suffered in the crash. There is no evidence that Dr. Powers has any medical expertise or that she is knowledgeable about Dow's employment decision making, either in general or with respect to plaintiff. Moreover, even if Dr. Powers were able to opine on the causal relationship between plaintiff's crash injuries and her loss of employment, her statements would be evidentiary admissions, not judicial admissions, and thus could be contested or explained by defendants. *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. . . . [O]rdinary evidentiary admissions, in contrast, may be controverted or explained by the party."). In short, the undisputed evidence does not establish the proximate cause element of plaintiff's negligence claims. Therefore, the Court denies her motion for summary judgment on them.

**Defendants' Motion**

Defendants seek summary judgment on plaintiff's damages claim for impaired earning capacity after February 6, 2017. Impaired earning capacity can be an element of damages, but recovery is limited to losses that are reasonably certain to occur. *Keiser-Long v. Owens*, 37 N.E.3d 914, 919-20 (Ill. App. Ct. 2015). "To recover for lost earning capacity, a plaintiff must produce competent evidence suggesting that his injuries have narrowed the range of economic

5

opportunities available to him, *i.e.*, that his injury has caused a diminution in his ability to earn a living." *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992) (quotation and citation omitted). Plaintiff is entitled to a jury instruction on loss of future earnings as long as there is some evidence in the record to justify giving it. *Reed v. Union Pac. R. Co.*, 185 F.3d 712, 718 (7th Cir. 1999). "The plaintiff 'may testify that his injuries diminished his capacity to work, and the appearance of [the] plaintiff on the witness stand and his testimony as to the nature of his injuries and their duration is sufficient to take the question of impaired earning capacity to the jury.'" *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 455 (Ill. 1998) (quoting *Shaheed v. Chi. Transit Auth.*, 484 N.E.2d 542, 549 (Ill. App. Ct. 1985)).

Plaintiff argues that there "is a constellation of admissible evidence that Plaintiff has suffered permanent physical and psychological injuries that have impaired her earning capacity." (ECF 135 at 6.) The relevant and undisputed facts plaintiff cites are: (1) Dr. Panuska's testimony that because of the injuries she sustained, plaintiff could no longer lift at the capacity required for her job at Dow, she was at risk for re-injury, her shoulder was not the same because the surgery had altered its anatomy, and her shoulder would never be as good as it was prior to the crash (ECF 159 ¶¶ 20-21); and (2) the testimony of plaintiff's psychologist, Dr. Karin S. Lloyd, that plaintiff suffers from PTSD and major depressive disorder as a result of the crash (*id.* ¶¶ 29, 31). But neither Dr. Panuska nor Dr. Lloyd testified that plaintiff's injuries would permanently impair her earning capacity.

Because the parties appropriately focus on the testimony of Dr. Panuska, yet reach very different conclusions as to the meaning of the testimony itself, we think it is worth parsing the doctor's testimony. Dr. Panuska definitively testified that he could not tell if plaintiff's injuries were permanent or whether she was permanently unable to return to her position at Dow. (ECF

6

110-5 at 42-43, 76.) While plaintiff correctly notes that the doctor did have opinions as to plaintiff's diminished arm strength at the time of his examination, her susceptibility to future injury, and the nature of the physiological change to the plaintiff's shoulder as a result of the surgery, those medical conclusions do not speak to the issue of permanent impairment of her ability to work at Dow, or more broadly to permanent impairment of plaintiff's earning capacity.

Moreover, though plaintiff says she applied for a number of jobs after Dow terminated her (ECF 159 ¶ 33), she does not say she was rejected by any employer because her injuries made her unable to perform the duties of the job she sought. In fact, despite her termination, plaintiff does not say that her injuries made her unable to perform the duties of her job with Dow.

Though plaintiff offers no evidence that suggests the crash caused her to suffer permanent injuries that impaired her earning ability, she contends that such evidence is unnecessary, citing *LaFever*. In plaintiff's view, *LaFever* "stands for the narrow proposition that evidence of a permanent or enduring impairment to earning capacity satisfies the 'some evidence' threshold needed to send the question of future loss earnings to the jury." (ECF 135 at 10.) But *LaFever* does not, in plaintiff's view, "stand for the proposition that evidence of a permanent or enduring impairment to earning capacity is *required* to send the question of future loss earnings to the jury." (*Id.*) (emphasis in original). The Court disagrees. In the words of the *LaFever* court:

> The sole question presented to the appellate court, and on appeal to this court, is whether adequate proof existed to warrant a jury instruction for lost future earnings. We find that plaintiff produced at least some evidence of *a permanent injury that has prevented him from continuing his prior employment.*

*LaFever*, 706 N.E.2d at 458-59 (emphasis added). Here, plaintiff has simply not presented any evidence of a permanent injury that prevented her from continuing her employment at Dow.

For the same reason, the Court rejects plaintiff's contention that evidence of other factors probative of an earnings loss claim, such as plaintiff's occupation, the amount she was earning at

the time of the injury, and her age, education, and language capabilities is a substitute for proof that she suffered a permanent injury that presented her from performing her job with Dow. The cases plaintiff cites for the notion that "other factor" evidence alone creates a fact issue for trial on an earnings loss claim simply do not say that. *See, e.g.*, *Robinson v. Greeley & Hansen*, 449 N.E.2d 250, 254 (Ill. App. Ct. 1983); *Keiser-Long*, 37 N.E.3d at 920; *Antol v. Chavez-Pereda*, 672 N.E.2d 320, 329 (Ill. App. Ct. 1996).

In short, to defeat defendants' motion, plaintiff must offer evidence that suggests the crash caused a permanent injury that impairs her earning ability. She has not done so, and thus she is not entitled to a jury trial on her claim for impaired earning ability.

## Conclusion

For the reasons set forth above, the Court denies plaintiff's motion for partial summary judgment [ECF 115], and grants defendants' motion for partial summary judgment [ECF 110].

**SO ORDERED.**  **ENTERED: January 26, 2023**

**M. David Weisman**
**United States Magistrate Judge**